Charles FOSTER, Appellant,

v.

Monroe EVERT, Respondent.

No. 69617.

Supreme Court of Missouri,
En Banc.

May 17, 1988.

As Modified on Denial of Rehearing
June 14, 1988.

Farrell D. Hockemeier, Richmond, for appellant.

Stanley M. Thompson, Richmond, for respondent.

ROBERTSON, Judge.

This is a direct appeal from the trial court's dismissal of appellant's petition for contest of a general election. Appellant attacks the constitutionality of Section 115.579, RSMo 1986. The dispositive issue, however, is whether the circuit court obtains jurisdiction over a general election contest when the circuit clerk issues a summons with a thirty-day return date in the face of Section 115.579, RSMo 1986 [1], which requires that any answer filed by a contestee in a general election contest be filed within fifteen days of the filing of the general election contest petition. This is a matter of first impression with this Court under the Comprehensive Election Act of 1977, Section 115.001, *et seq.* We do not reach the constitutional questions, although they provide the basis for our jurisdiction. Mo. Const. art. V, § 3. The judg-

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

ment of the trial court is reversed and the cause remanded for further proceedings.

### I.

On April 7, 1987, appellant Charles Foster received 670 votes for the office of Mayor of Richmond, Missouri; Monroe Evert polled 713 votes. Two days later, on April 9, 1987, the election authority declared Evert the official winner. On April 27, 1987, Foster filed a petition in the Circuit Court of Ray County pursuant to Section 115.577, contesting the election. At the time appellant filed his petition, the circuit clerk issued a standard summons, Civil Procedure Form No. 1, which required a return within thirty days, despite a request that the clerk consider Section 115.-579 before doing so.

On May 12, 1987, fifteen days after the institution of the election contest, respondent entered a special appearance and filed a motion to dismiss. The motion claimed that because the summons provided a thirty-day return, and the fifteen days provided for answer by Section 115.579 had expired, the trial court was without jurisdiction to proceed. Following a hearing on May 15, 1987, the circuit court sustained the motion to dismiss.

### II.

### A.

Appellant argues that the trial court erred in holding that the thirty-day summons issued in this case failed to vest jurisdiction in the circuit court. Respondent contends that the thirty-day summons failed to provide the trial court with personal jurisdiction over him. In the absence of personal jurisdiction over the contestee/respondent, and the expiration of the fifteen days allowed by statute for respondent's answer, respondent argues that the trial court could not proceed and properly dismissed appellant's petition. Further, because the thirty-day period provided by Section 115.577 for filing election contests had

also expired, respondent continues, this election contest is forever barred. Respondent relies on *State ex rel. Craig v. Grimm*, 542 S.W.2d 335 (Mo.App.1976).[2] Respondent acknowledges that *Grimm* involves a primary election contest case, but cites *Grimm* for the proposition that service of the summons upon the contestee is jurisdictional and

> is absolutely essential to the validity of the proceeding.... [A] summons commanding him to appear 30 days hence does not confer jurisdiction over his person.... It was the duty of the trial court to ascertain jurisdiction over the person of the contestee before proceeding with the contest.... And as the five-day period within which the law provides [for primary elections] the summons must be made returnable has long since expired, the respondent and the Circuit Court of Scott County have forever lost jurisdiction in the cause.

*Id.* at 338.

### B.

### 1.

A general election contest challenges the validity of the very process by which we govern ourselves; it alleges that through an irregularity in the conduct of an election, the officially announced winner did not receive the votes of a majority of the electorate. That the General Assembly need not permit election contests is beyond cavil. But by allowing election contests, the General Assembly has determined that the accuracy of election results is a matter of significant importance to our democratic process.

If as a result of election irregularities the wrong candidate is declared the winner, more is at stake than the losing candidate's disappointment; the people have lost the ability to impose their will through the electoral process. Thus to claim that a general election contest is no more than an adversary proceeding between a losing candidate and the officially announced winner

**2.** *See also Mitchell v. Carrington,* 610 S.W.2d 412 (Mo.App.1980), which reaches a similar result in

a primary election contest.

is to misunderstand the *raison d'etre* of election contests and to discount the importance the legislature has placed on accuracy in elections. An election contest, as we will later repeat, is an action by which the contestant challenges the conduct of the election itself. In bringing an election contest, the contestant speaks for the entire electorate, seeking to assure all that the democratic process has functioned properly and that the voters' will is done.

### 2.

The election contest statutes provide special rules for issuance and service of summons; for the establishment of a return date; for a contestee's answer; for expedited trial settings and for the contestant's burden of proof. The statutory requirements are clear and unambiguous. "It is only by the invention of a tortuous reading that the election contest statutes can be made to be confusing, indefinite or uncertain. The statute clearly announces the parties and the procedures by which contests are to be conducted." *Beatty v. Metropolitan St. Louis Sewer District*, 700 S.W.2d 831, 837 (Mo. banc 1985).

■ This Court has said that election contest statutes are a code unto themselves. The procedures there established are "exclusive and must be strictly followed as substantive law." *Hockemeier v. Berra*, 641 S.W.2d 67, 69 (Mo. banc 1982). From this conclusion it also follows that technical requirements which relate to the service of summons in ordinary civil actions do not apply when election contest statutes provide a contrary procedure. To the extent that it relies on rules of procedure which normally control civil actions to address election contest issues, respondent's argument is flawed; that flaw is shared by *Grimm*. For the reasons which follow, *Grimm* and cases which require personal service on the contestee as a basis for jurisdiction in election contests should no longer be followed.

### 3.

■ When an election contest petition is filed, Section 115.579.1 imposes a duty on the clerk of the circuit court to issue a summons returnable "by the day designated by the circuit court." If after two days, the sheriff cannot obtain personal service on the contestee, service is sufficient if a copy of the petition is left at the address listed by the contestee on his declaration of candidacy and a copy of the summons is posted "in a conspicuous place in the office of the clerk of the circuit court." Section 115.579.1. Personal service on the contestee is thus not a condition precedent to the trial court obtaining jurisdiction over an election contest.

■ The time for the contestee's answer runs from the day of the filing of the petition, not service on the contestee. Section 115.579.3. No answer is required of the contestee. "The contestee *may* file an answer to the petition...." [Emphasis added]. *Id.* This is because an election contest is not simply a legal action pitting a losing candidate against the officially declared winner of the election. An election contest challenges the *conduct* of the election itself. Section 115.579.2 recognizes this by requiring the circuit clerk to serve the election authority with a copy of the petition. Further, by not requiring an answer of the contestee, the statutes do not permit the entry of a default judgment upon failure to answer. Section 115.579.3; Section 115.581.

■ The contestee's answer, if filed, serves two limited purposes: to allow the contestee to indicate specific reasons "why his nomination should not be contested" and to permit the contestee to set out "the votes he wishes to contest and the facts he wishes to set forth in support of such contest". Section 115.579.3. Section 115.581, states: "Immediately upon the filing of a petition and answer, *if there is any*, the court shall proceed to try the case...." [Emphasis added]. On the merits, the trial court is required to order an election recount on a mere prima facie showing of election irregularities sufficient to cast doubt on the results announced. A prima facie case is made "if the validity of a number of votes equal to or greater than the margin of defeat is placed in

doubt...." Section 115.583. Any recount focuses only on the votes "brought in question by the petition or its answer...." *Id.* Only after the recount has shown that a candidate other than the officially declared winner received a majority of votes may the court order the contestee to relinquish his office. Section 115.595.1.

■ From the clear language of the election contest statutes, we conclude that an election contest is procedurally analogous to an *in rem* action. The *res* is the election itself. The trial court acquires jurisdiction over the *res* when the election contest petition is filed in conformity with the requirements of Chapter 115. The contestee has the option to participate in the interest of expanding any issue relating to the contested election. Section 115.583.

### C.

■ In this case, the contestee did not file an answer. This was not for want of notice; the sheriff served respondent on April 28, 1987, one day after appellant filed his petition. Moreover, the petition clearly described the statutory basis for the contest. Respondent chose not to file an answer despite the clear language of Section 115.579.3, which notified him that his answer was due within fifteen days. Instead, he waited until the expiration of the fifteen days, assuming at his peril that the summons issued was insufficient to vest jurisdiction in the court after the expiration of that time. When respondent failed to file his answer, Section 115.581 required the circuit court to set the case for trial "immediately." No further action was required of the contestant. Under the facts of this case, the thirty-day summons, though erroneous, did not divest the trial court of jurisdiction over this election contest. In failing to set the contest for trial immediately and in dismissing the case, the trial court erred.

The trial court's judgment is reversed and the cause remanded for trial.

BILLINGS, C.J., and BLACKMAR, RENDLEN and HIGGINS, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

Section 115.579, RSMo 1986, requires that a summons with a fifteen-day return date issue. A summons with a thirty-day return date was improper in this proceeding. The principal opinion holds that the circuit court *obtained jurisdiction* over the general election contest when the circuit clerk issued the summons with a thirty-day return date. I must disagree.

When there is a deficiency in the summons issued and served, the law has been that the trial court is without jurisdiction to proceed with the election contest and must dismiss the case. *See State ex rel. Hancock v. Spencer,* 166 Mo. 279, 65 S.W. 984 (1901); *State ex rel. Bulger v. Southern,* 278 Mo. 610, 214 S.W. 100 (banc 1919); *State ex rel. Kaysing v. Ryan,* 334 Mo. 743, 67 S.W.2d 983 (banc 1934); *State ex rel. Penrose v. Killoren,* 354 Mo. 22, 188 S.W.2d 1 (banc 1945); *Messick v. Grainger,* 356 Mo. 1227, 205 S.W.2d 739 (1947); *Jones v. Buckley,* 425 S.W.2d 204 (Mo.1968).

The opinion in *State ex rel. Frazier v. Green,* 143 S.W.2d 64 (Mo.App.1940), is particularly enlightening on the question. The court considered whether the circuit court could proceed in a primary election contest where the sheriff served upon the contestee only a copy of the contestant's petition. The statute required that a writ of summons also be served upon the contestee. The court stated:

Under this statute it is perfectly plain that a summons in the statutory form shall be issued and served by the sheriff together with a copy of the petition of the contestee. This is the only way in which the court can get jurisdiction over the person of the contestee, unless he voluntarily appears thereto.

143 S.W.2d at 67. Considering whether the court should consider parol evidence to determine whether the sheriff did, in fact,

serve a copy of the writ of summons upon the contestee, the court stated:

> The return of the sheriff is a record of the court of the highest order. It is the initial process by which the defendant is brought into court. In no other manner, except by voluntary appearance, can the court obtain jurisdiction over the person of the contestee in a proceeding under the statute relating to primary election contests.

Under these cases, appellant's petition for election contest was properly dismissed. However, the principal opinion chooses to ignore precedent and to declare that the circuit court must proceed with the election contest even though the summons was deficient. Without citation of authority, the principal opinion trivializes the importance of the parties to this action and excises the statutory requirement that the circuit court obtain jurisdiction over the contestee before proceeding.

The principal opinion declares the requirements of the election contest statutes clear and unambiguous and cites *Beatty v. Metropolitan St. Louis Sewer District,* 700 S.W.2d 831, 837 (Mo. banc 1985), for the holding that "[t]he statute clearly announces the parties and the procedures by which contests are to be conducted." But then the principal opinion inexplicably subverts the contestee's role in the election contest by ignoring the statutory requirement that the circuit court obtain jurisdiction over the contestee, stating:

> From the clear language of the election contest statutes ... an election contest is procedurally analogous to an *in rem* action. The *res* is the election itself. The trial court acquires jurisdiction over the *res* when the election contest petition is filed in conformity with the requirements of Chapter 115. The contestee has the option to participate in the interest of expanding any issue relating to the contested election. § 115.583.

The principal opinion also states: "In bringing an election contest, the contestant speaks for the entire electorate, seeking to assure all that the democratic process has functioned and that the voters' will is done."

The principal opinion notwithstanding, the General Assembly has carefully defined the parties and their roles in an election contest. Subsection 1 of § 115.553, RSMo 1986, provides that "[a]ny *candidate* for election to any office may challenge the correctness of the returns for the office, charging that irregularities occurred in the election." (Emphasis added). Such person is the *contestant.* The *contestee* is the person who was declared the winner of the election by the election authority. §§ 115.-577 and 115.579, RSMo 1986.

Subsection 2 of § 115.553, RSMo 1986, provides that "[t]he result of any election on any *question*" may be contested by a registered voter. (Emphasis added). Such person is the *contestant.* The *contestee* is the "officer or election authority responsible for issuing the statement setting forth the result of the election...." § 115.553.2.

Thus, where title to an office is at stake, only a candidate for election to that office has standing to challenge the correctness of the election results. § 115.553.1. "The function of the service of the summons upon the contestee is to fix the day upon which he must appear in court, leaving it entirely optional with him as to whether he will file any written pleading." *State ex rel. Bess v. Schult,* 143 S.W.2d 486, 492 (Mo.App.1940). If the contestee chooses to file an answer, he *must* specify "reasons why *his* nomination should not be contested." § 115.579.3. (Emphasis added). In addition, he *may* "contest the validity of any votes given to the contestant" and if he does contest the validity of such votes, he *must* "set forth in his answer the votes he wishes to contest and the facts he will prove in support of such contest." § 115.579.3.

Thus, under this statutory scheme, the contestant does not speak "for the entire electorate, seeking to assure all that the democratic process has functioned properly and that the voters' will is done." Where the electorate has a cognizable interest at stake in an election, the General Assembly

has granted standing to the electorate to challenge the result of the election. This occurs when the election is on a *question,* not an *office.* § 115.553.2.

Subsection 1 of § 115.553 is involved in this appeal. At issue are the election results for election to an office. Respondent Evert was declared the winner of the election. He is the *contestee.* Appellant Foster was not declared the winner of the election. He is the *contestant.*

As a contestee, the statute entitles respondent Evert to notice of the proceedings and requires the court to obtain jurisdiction over him. Section 115.579 explicitly states that "if the contestee cannot be found within two days, the summons shall be served by leaving the summons and a copy of the petition at the residence address shown on the contestee's declaration of candidacy and by posting the summons in a conspicuous place in the office of the clerk of the circuit court." The statutory requirement that the summons either be personally served or posted is the process by which jurisdiction is obtained. This is a requirement imposed by the election contest statute itself, not by the courts in reliance on procedures that apply in ordinary civil cases.

Crucial to the majority's holding is the statement: "*Grimm* and cases which require *personal service* on the contestee as a basis for jurisdiction in election contests should no longer be followed." (Emphasis added). In *State ex rel. Craig v. Grimm,* 542 S.W.2d 335 (Mo.App.1976), the court held that proper service of process is a prerequisite to the court's acquiring jurisdiction. The court did not require personal service in *Grimm.* The court required that a proper summons be issued for the court to acquire jurisdiction. The majority cites no cases, nor am I aware of any, that require service beyond that required by the election contest statute itself, i.e., section 115.579 expressly requires personal service if the contestee can be found within two days. *Grimm,* however, does cite cases involving ordinary civil actions for the proposition that the summons is jurisdictional. Although, as the majority states,

the "technical requirements which relate to the service of summons in ordinary civil actions do not apply when election contest statutes provide a contrary procedure", section 115.579 explicitly states that "[t]he summons shall be served ... in the same manner provided for service of process in civil actions." As already noted, this Court has consistently held that the proper issuance and delivery of the summons is a prerequisite to the circuit court's jurisdiction in election contests. Thus, to hold that *"personal service* on the contestee as a basis for jurisdiction in election contests" is not necessary is inapposite to the issues in this case.

If "jurisdiction over a general election" is to be the issue on this appeal, the essential question is: What is the effect of the deficient summons in this case? Historically, the courts of Missouri have held a deficient summons precludes a circuit court from proceeding with an election contest. Of course, this Court may choose to expressly declare otherwise. But this Court should not interpret a statute which unambiguously defines the parties and their respective roles in an election contest in a manner inconsistent with clear legislative intent.

I respectfully dissent.

WELLIVER, Judge, dissenting.

I respectfully dissent and concur in the dissenting opinion of Donnelly, J. I write separately to touch upon what I believe to be other pertinent matters.

The most obvious flaw in the principal opinion is the degree to which it confuses the interest of the candidate in the outcome of the election with what I perceive to be the public interest in elections—that they be fairly conducted and their outcome finalized at the earliest possible moment. The result of the principal opinion is that this April 7, 1987, election cannot possibly be finalized by the trial court earlier than one year and two or three months following the election, depending on discovery and condition of the trial docket. If appealed, finalization cannot be expected before the expiration of two years or more, either after

the end of the terms of office, or half-way through the term, depending upon whether the mayor's term is two or four years. The broad language utilized by the principal opinion cannot be interpreted as other than an open invitation that this become true in all close elections.[1]

The most obvious technical flaw in the principal opinion is that it is decided on a point not raised in the appeal. Appellant raised five points on appeal: (1) whether § 115.579 required a summons with a fifteen-day return date; (2) that § 115.579 as applied by the circuit court to dismiss his petition deprived him of due process because it was too vague and ambiguous to give notice to the parties and court officials that a summons with a fifteen-day return date was required; (3) that § 115.579 as applied by the circuit court to dismiss his petition violated his right to access to the courts under the Missouri and United States Constitutions; (4) that § 115.579 as applied by the circuit court to dismiss his petition deprived him of due process of law under the Missouri and United States Constitutions because it dismissed his cause of action without a hearing on the merits; (5) that § 115.579 as applied by the circuit court to dismiss his petition deprived him of the right to equal protection under the United States Constitution because an action in which a summons with a fifteen-day return date would have been considered on the merits.

In *Beatty v. Metropolitan St. Louis Sewer District*, 700 S.W.2d 831 (Mo. banc 1985), this Court determined that the procedural requirements of the Comprehensive Election Act are not vague or ambiguous. Because the trial court dismissed appellant's petition *without prejudice,* and appellant did not file, or seek leave to file, another election contest petition in the circuit court after the dismissal, I would hold that appellant does not have standing to assert that he was denied a meaningful opportunity for a hearing on the merits of his claim or that he was deprived of his right to judicial review in violation of the

Equal Protection Clause. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (dismissal with prejudice under similar circumstances violates party's constitutional right of due process). I would reject appellant's open courts claim on the same grounds.

Had appellant alleged trial court error for denying his motion to amend the summons, there might be merit to his claim. However, this question cannot be reached because appellant's failure to ascertain whether another petition could be filed negates any prejudicial impact the trial court's ruling on this issue would otherwise have. Dismissal without prejudice dismisses the petition, not the action. *Pender v. Pender,* 634 S.W.2d 244 (Mo.App.1982).

The trial court should be affirmed.

---

1. Another and similar case pends application for transfer as we vote this case. Like this case,

finalization would involve a similar amount of time.