

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JOSHUA EDWARD HEDGECORTH, | ) | No. ED110755 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Washington County |
| vs. | ) | 22WA-CC00130 |
| | ) | |
| JOHN I. JONES, IV, | ) | Honorable Daren L. Adkins |
| | ) | |
| Appellant. | ) | Filed: September 13, 2022 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

### Introduction

This expedited appeal involves an election contest filed by Contestant Joshua Hedgecorth ("Hedgecorth") challenging, pursuant to section 115.526[1] of Missouri's election contest law, the qualifications of Contestee John Jones, IV ("Jones") to appear on the primary election ballot as a candidate for Prosecuting Attorney of Washington County. The trial court entered its judgment on June 23, 2022 disqualifying Jones as a candidate.

Jones now asserts on appeal that: (1) the trial court erred by failing to dismiss Hedgecorth's petition because the election contest statute's mandatory deadlines and procedures for the issuance and service of the summons and petition were not followed which deprived the trial court of jurisdiction over this case; (2) the trial court's decision to disqualify Jones on the basis that he did

---

[1] All statutory references are to Revised Statutes of Missouri (2016) unless otherwise stated.

not reside in Washington County for at least one year before the November 8, 2022 general election as required by section 56.010 was against the weight of the evidence; and (3) the trial court erred by failing to dismiss Hedgecorth's petition because section 115.127.3's eight-week deadline to remove Jones from the ballot had lapsed which rendered Hedgecorth's petition moot as a matter of law.

We reverse based on our conclusions (1) that section 115.579.1's requirements regarding the issuance and service of the summons and petition apply to this section 115.526 action, and (2) that the failure to comply with those requirements in this case stripped the trial court of the authority to grant Hedgecorth the relief he sought in his petition, i.e., the disqualification of Jones.

**Background**

On February 22, 2022, Jones filed his application to be a candidate in the August 2, 2022 primary election for the office of Prosecuting Attorney of Washington County. On April 21, 2022, Hedgecorth filed a petition contesting Jones's qualifications to seek or hold that office. Hedgecorth alleged that Jones was not a bona fide resident of Washington County for at least twelve months immediately preceding November 8, 2022, the date of the general election, as required by section 56.010.

The circuit clerk's office issued a summons five days later on April 26, 2022. Jones was personally served with the petition and summons on May 5, 2022, fourteen days after the petition was filed. On May 9, 2022, Jones moved to dismiss the petition contending that the trial court lacked jurisdiction because the summons was not "immediately" issued as required by the election contest statute, nor was Jones served within the time and in the manner prescribed in the statute. The trial court overruled the motion and set the matter for trial. On May 24, 2022, Jones filed a

2

petition for writ of prohibition with this Court reiterating his claim that the trial court lacked jurisdiction. This Court denied the writ petition on May 27, 2022.

The matter proceeded to trial on June 6, 2022. On June 9, the trial court entered its judgment finding that since Jones did not satisfy section 56.010's residence requirement, he was disqualified as a candidate for nomination for the office. The court directed the county clerk not to print Jones's name on the primary ballot.

On June 22, 2022, Jones filed a motion to amend the court's judgment asserting that the matter was moot after June 7, 2022 pursuant to section 115.127.3, which states "in no event shall a candidate or issue be stricken or removed from the ballot less than eight weeks before the date of the election." Jones asked that the court withdraw the judgment and dismiss Hedgecorth's petition as moot. On June 23, 2022, the trial court entered its amended judgment disqualifying Jones but removed the instruction to the county clerk that Jones's name not be printed on the official primary ballot. This appeal follows.

**Standard of Review**

In a court-tried case, this Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The construction of a statute presents a legal question that we review *de novo. Silvey v. Bechthold*, 499 S.W.3d 760, 762 (Mo. App. W.D. 2016). *See, e.g.*, *Miller v. Frank*, 519 S.W.3d 472, 475 (Mo. App. E.D. 2017) ("We will examine *de novo* issues of law, including questions of statutory and constitutional interpretation.").

3

**Discussion**

**I.**

The task before us is to discern the legislature's intent with respect to the procedures to be followed concerning the issuance and service of the summons and petition in a section 115.526 election contest challenging a candidate's qualifications inasmuch as section 115.526 does not specifically address those issues. To undertake this task, we turn to the well-worn principles of statutory construction. "The primary rule of statutory construction is to determine the intent of the legislature from the language used and give effect to that intent." *Wright-Jones v. Johnson*, 256 S.W.3d 177, 181 (Mo. App. E.D. 2008). Words are given their plain and ordinary meaning. *Id.* Additionally, "we construe statutes in such a way as to avoid unreasonable, oppressive, or absurd results." *Id.* Perhaps most important for purposes of this case, the whole legislative act must be read together, and all provisions should be harmonized if possible. *Id.*

"Election contest statutes 'are a code unto themselves,' and election contest procedures are 'exclusive and must be strictly followed as substantive law.'" *Mosley v. English*, 501 S.W.3d 497, 501 (Mo. App. E.D. 2016) (quoting *Chastain v. James*, 463 S.W.3d 811, 819 (Mo. App. W.D. 2015) (quoting in part *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo.banc 1988)). "The party requesting relief must bring [himself] within its terms." *Id.* Moreover, "[s]trict compliance with the election contest statutes is necessary to confer subject matter jurisdiction upon the trial court." *Wright-Jones*, 256 S.W.3d at 180.[2]

---

[2] *Wright-Jones* was decided one year before the Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo.banc 2009), in which the Court clarified the concepts of subject matter jurisdiction and personal jurisdiction and juxtaposed these concepts with the trial court's *authority* to grant relief and remedies under a particular statute. *Id.* at 253-55. Therefore, we read *Wright-Jones's* reference to "jurisdiction," as *Webb* requires us to, as "merely setting statutory limits on remedies or elements of claims for relief that courts may grant." *Id.* at 255.

4

In sections 115.526 to 115.601, the legislature has laid out the exclusive provisions governing election contests. Since this is a primary election contest, we note that "primary election contests can take three forms. First, before a primary election is held, the election may be contested on the basis of a candidate's qualifications for nomination to office under section 115.526." *Id.* Sections 115.527, 115.531, and 115.553, govern election contests *after* a primary election has been held. *Id.* Lastly, section 115.601 provides when recounts may be ordered and held after an election. *Id.*

In addition, the legislature has provided specific procedures based on the type of office at issue. For instance, election contests involving state-wide offices[3] are treated in sections 115.555 to 115.561. Those sections assign to the Supreme Court of Missouri the authority to litigate and resolve such contests. Likewise, section 115.565 grants exclusive jurisdiction to the Missouri House of Representatives and to the Missouri Senate over election contests involving those respective offices.

In sections 115.533.1, 115.559.1, 115.579.1, the legislature set forth the same procedures to be followed for the issuance and service of the summons and petition on the contestee. Specifically, the legislature stated in each of those sections that "immediately"[4] after the election contest petition is filed, the clerk of the court "shall issue a summons" which shall be served on the contestee. *Id.* Each of those sections then provides that if the contestee is not "found within two days, the summons shall be served" by leaving it and a copy of the petition at the contestee's residence and by posting the summons in a conspicuous place in the clerk's office. *Id.*

---

[3] These offices include governor, lieutenant governor, secretary of state, attorney general, state treasurer, and state auditor.

[4] "Immediately," in the context of election statutes, means the same day the petition is filed. *Mosley v. English*, 501 S.W.3d 497, 501 (Mo. App. E.D. 2016).

Unfortunately, section 115.526 fails to include in its space any reference to the procedures to be followed regarding the issuance and service of the summons and petition.[5]  Thus, we must determine how the legislature intended for those matters to be handled.  In general, when "statutes governing election contests are silent as to the procedural rules to apply in the conduct of such contests, the relevant procedural statutes and rules that apply in all civil actions also apply in governing procedure in election contests."  *Mosley*, 501 S.W.3d at 502-03 (quoting *Moore v. Morehead*, 666 S.W.2d 460, 461 (Mo. App. W.D. 1984)).  But here, the legislature is not silent.

Here, section 115.526 mandates that "[t]he procedure in such matters shall be the same as that provided in sections 115.527 to 115.601, to the extent that it is applicable and not in conflict with the provisions of this section."  We interpret this language as the legislature's instruction that we harvest the applicable provisions from sections 115.527 to 115.601 to complete the procedural course for a section 115.526 election contest inasmuch as that section does not specifically include any summons issuance or service language.[6]

Following our review of sections 115.527 to 115.601, we find that section 115.579's language regarding the issuance and service of the summons and petition applies to election contests brought under section 115.526.  We reach this conclusion based on our reading of the statute and on our prior decision in *Wright-Jones* in which we held that:

> "[t]he language of sections 115.575.1 and 115.575.2 provides that all contests, *including those on the basis of qualification*, shall be heard and determined by the circuit court of any circuit in which all or any part of the election was held and in which the irregularity occurred. Although the language of section 115.575.2 indicates that a contested election shall be heard and determined by a circuit court where the election [was held], we find that the legislature intended that a section 115.526 qualifications challenge, which takes place

---

[5] Nevertheless, section 115.526 does include a specific procedure and deadline for the filing of the verified petition.

[6] Jones argues that section 115.533, which is practically identical to section 115.579, applies to this section 115.526 challenge.  We disagree because section 115.533 by its terms specifically applies to election contests filed *after* a primary election has taken place.

6

before an election is held, shall be heard and determined by a circuit court where the election [will be held]."

256 S.W.3d at 183 (emphasis added). In light of *Wright-Jones*'s finding that section 115.575.2 applies to an election contest brought under section 115.526, it follows that section 115.579 also applies to a section 115.526 contest. Section 115.575.2 applies to "[a]ll contested elections" except those involving state-wide offices, house and senate seats, and circuit and associate circuit judge elections. And it is apparent upon review of sections 115.575 and 115.579, that through section 115.579, the legislature has simply provided for the procedures to be followed after a petition is filed pursuant to section 115.575.2.

Therefore, we conclude that section 115.526.3's directive that we look to sections 115.527 to 115.601 for the procedure to be followed in a section 115.526 election contest challenging the qualifications of a candidate necessarily leads us to section 115.579, which states:

> "Immediately after a petition is filed, the clerk of the circuit court shall issue a summons upon the petition to the contestee, returnable by the day designated by the circuit court to the circuit court. The summons shall be served in any county of the state in the same manner provided for service of process in civil actions. If the contestee cannot be found within two days, the summons shall be served by leaving the summons and a copy of the petition at the residence address shown on the contestee's declaration of candidacy . . . ."

This conclusion is in keeping with the legislature's repeated emphasis throughout the election contest statute on the need to expedite such litigation. *See State ex rel. Wilson v. Hart*, 583 S.W.2d 550, 552 (Mo. App. E.D. 1979) ("Were [the word 'immediately'] construed otherwise, such construction would disrupt the specific time requirements established in other statutory provisions governing election contests, thereby undermining the statute's purpose of assuring an early resolution of election disputes.").

Finally, Jones has incorrectly couched the issue here in terms of whether the trial court had jurisdiction or not. Missouri courts recognize only two kinds of jurisdiction: subject matter

7

jurisdiction and personal jurisdiction. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo.banc 2009). "[P]ersonal jurisdiction refers . . . to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests," whereas subject matter jurisdiction refers to "the court's authority to render a judgment in a particular category of case." *Id.* at 253. In Missouri, "[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal." Mo. Const. art. V, sec. 14 (emphasis added). Here, personal jurisdiction and subject matter jurisdiction were both satisfied.

"The circuit court's statutory or common law *authority* to grant relief in a particular case differs from the circuit court's constitutionally granted subject matter and personal jurisdiction." *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo.banc 2010) (emphasis added). Therefore, the appropriate term here is "authority" or "power" rather than "jurisdiction." *See Miller v. Frank*, 519 S.W.3d at 478 (where Appellants contended that the trial court lacked jurisdiction, the court held that "[t]he trial court had no authority to entertain Appellants' improper challenge to the qualifications of other candidates" and "[w]ithout authority to address Appellants' claims, the trial court only possessed power to dismiss the action.").

Moreover, in *Hinesly v. Todd,* the court stated:

> Rather than "authority," Hampton's point on appeal uses the word "jurisdiction." Indeed, a review of election contest jurisprudence reveals that the procedures and remedies provided by sections 115.526 – 115.601 have been described in jurisdictional terms . . . [h]owever, as clarified by our supreme court in *J.C.W. ex rel Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo.banc 2009), a circuit court's subject matter jurisdiction is controlled by article V, section 14 of the Missouri Constitution and not by statute. "When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant." *J.C.W.*, 275 S.W.3d at 255. "Simply stated, a claim that a trial court has exceeded its statutory power or authority does not implicate the trial court's subject matter jurisdiction." *State v. Brown*, 406 S.W.3d 460, 464 (Mo. App. 2013).

430 S.W.3d 291, 294 n.4 (Mo. App. S.D. 2014).

8

Therefore, the fundamental issue before us is not whether the trial court had jurisdiction, but whether the court had the authority under the applicable election contest statute to grant the relief Hedgecorth sought despite the failure to comply with the mandatory deadlines and procedures applicable to the issuance and service of the summons and petition. That failure is manifest because the summons was not issued on the same day as the petition was filed and the summons and petition were not served in the time and manner required by section 115.579. Point I is granted.[7]

## Conclusion

The failure to strictly comply with the mandatory deadlines for the issuance of the summons and the service of the summons and petition deprived the trial court of the authority to proceed with this case and to disqualify Jones. Therefore, we reverse the trial court's judgment.[8]

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J., concur.

---

[7] Because our decision on Point I is dispositive, we need not address Points II and III.
[8] Respondent's motions to take judicial notice of appellate briefs filed in other litigation are denied.

9